# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

CHRIS RUCKER                                                            PLAINTIFF

V.                      NO. 4:19CV00585 JM/PSH

ANDREW SAUL, COMMISSIONER OF
SOCIAL SECURITY ADMINISTRATION[1]            DEFENDANT

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge James M. Moody, Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## I. Introduction:

Plaintiff, Chris Rucker, applied for disability benefits on July 21, 2017, alleging a disability onset date of November 23, 2016. (Tr. at 10). The application was denied initially and upon reconsideration *Id*. After conducting a hearing, the Administrative Law Judge ("ALJ") denied Mr. Rucker's claim. (Tr. at 20). The

---

[1] On June 6, 2019, the United States Senate confirmed Mr. Saul's nomination to lead the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d), Mr. Saul is automatically substituted as the Defendant.

Appeals Council denied his request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Mr. Rucker has requested judicial review. For the reasons stated below, the Court should affirm the decision of the Commissioner.

## II. The Commissioner's Decision:

The ALJ found that Mr. Rucker had not engaged in substantial gainful activity since the alleged onset date of November 23, 2016. (Tr. at 12). At Step Two of the sequential five-step analysis, the ALJ found that Mr. Rucker had the following severe impairments: prosthetic right eye, loss of vision in the right eye (monocular vision), congenital cerebral palsy, contractures of right ankle secondary to cerebral palsy, and status post Achilles tendon lengthening on the right. *Id.*

The ALJ found that Mr. Rucker's impairments did not meet or equal a listed impairment. *Id*. Before proceeding to Step Four, the ALJ determined that Mr. Rucker had the residual functional capacity ("RFC") to perform work at the sedentary level, with limitations. (Tr. at 13). He could occasionally use foot pedals and controls, and he was unable to perform a job that required wide peripheral vision and keen depth perception. *Id.*

The ALJ next found that Mr. Rucker was unable to perform any of his past relevant work. (Tr. at 19). The ALJ relied on the testimony of a Vocational Expert ("VE") to find that, considering Mr. Rucker's age, education, work experience, and

RFC, jobs existed in significant numbers in the national economy that he could perform. (Tr. at 20). Therefore, the ALJ found that Mr. Rucker was not disabled. *Id.*

## III. Discussion:

### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*,

784 F.3d at 477. The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing.

B. Mr. Rucker's Arguments on Appeal

Mr. Rucker contends that substantial evidence does not support the ALJ's decision to deny benefits. His only argument is that the ALJ did not give proper weight to the opinion of treating physician Dr. James Head, M.D. After reviewing the record as a whole, the Court concludes that the ALJ did not err in denying benefits.

Mr. Rucker had cerebral palsy that caused problems in his right foot. He worked for years as a painter even with problems from cerebral palsy. (Tr. at 13-14). At clinic appointments, Dr. Head observed only mild swelling and mild tenderness, with intact sensation and motor strength. (Tr. at 13, 264). Still, he found Mr. Rucker had severe equinus contracture, which required surgery. (Tr. at 262-263). Mr. Rucker had Achilles lengthening surgery on November 22, 2016. (Tr. at 256). Thirteen days after surgery Dr. Head observed that Mr. Rucker was doing well. (Tr. at 270). He said he should transition to weight-bearing activities and do physical therapy. (Tr. at 271-273). Dr. Head encouraged active range of motion exercises and stretching. (Tr. at 273). A physician's recommendation to exercise suggests that a claimant has an increased functional capacity. *See Moore v. Astrue*, 572 F.3d 520,

524 (8th Cir. 2009). Mr. Rucker was placed in a walking boot and admitted that he was much better as a result. (Tr. at 268). He said that physical therapy helped, and in July 2017, he had excellent plantar flexion with only mild swelling. Mr. Rucker fractured his toe in April 2017, but a bone scan showed a healing fracture in May 2017. (Tr. at 303-305). By October 2017, Mr. Ricker said he was doing very well. (Tr. at 316). In general, Mr. Rucker's treatment was conservative, with orthotics, a boot, and anti-inflammatories.

Dr. Head completed a medical source statement in August 2018. (Tr. at 372-376). He limited Mr. Rucker in his ability to sit, stand, and walk, and said that he would miss more than four days a month from work. *Id*. Mr. Rucker argues that the ALJ should have given this opinion more weight.

The opinion was on a short checkbox form with little reference to objective findings. A conclusory checkbox form has little evidentiary value when it cites to no medical evidence and provides little or no elaboration. *Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012). And it was inconsistent with the improvement noted by Dr. Head, and Mr. Rucker's positive response to treatment. Surgery was effective. Physical therapy helped. Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000). Clinical examinations showed only mild tenderness. And Mr.

5

Rucker could do things like prepare meals, feed his pets, do laundry and dishes, and shop in stores. (Tr. at 197-199). Such daily activities undermine his claims of disability. *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995). The ALJ properly found Dr. Head's statement to be unpersuasive. (Tr. at 17).

**VI. Conclusion:**

There is substantial evidence to support the Commissioner's decision that Mr. Rucker was not disabled. The ALJ gave proper weight to the opinion of Dr. Head. The decision, therefore, should be affirmed. The case should be dismissed, with prejudice.

IT IS SO ORDERED this 27th day of March, 2020.

_____
UNITED STATES MAGISTRATE JUDGE